UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ERIC WEISS,

                          Plaintiff,

            v.

CITY OF NEW YORK; MARK SCARLATELLI, Individually; CLYDE MOYER, Individually; MATTHEW REICH, Individually; and JANE DOE 7 through 10, individually (the names John and Jane Doe being fictitious, as the true names are presently unknown),

                        Defendants.

**MEMORANDUM AND ORDER**

16-CV-0776 (LDH) (RER)

---

LASHANN DEARCY HALL, United States District Judge:

      Plaintiff Eric Weiss brings this action against Defendants City of New York, Police Officers Mark Scarlatelli, Clyde Moyer, Matthew Reich, and John and Jane Does 1 through 10, asserting claims pursuant to 42 U.S.C. § 1983 and New York state law. Specifically, Plaintiff asserts claims against one or more Defendants for false arrest and unlawful imprisonment, excessive force, unreasonable search, failure to intervene, *Monell* liability, assault, battery, and violation of the New York State Constitution.

      Defendants City of New York, Scarlatelli, Moyer, and Reich (collectively, "Defendants") move pursuant to Rule 56 of the Federal Rules of Civil Procedure for partial summary judgment to dismiss Plaintiff's claims for false arrest and unreasonable search. Additionally, Defendant Moyer moves to dismiss Plaintiff's excessive force and failure to intervene claims. Defendant City of New York also seeks dismissal of Plaintiff's claim for municipal liability pursuant to *Monell* and the New York State Constitution.

## BACKGROUND[1]

On November 18, 2014, Plaintiff rode as a passenger in a tow truck driven by Anthony Ropas. (Defs.' Reply R. 56.1 Statement Material Facts Supp. Partial Summ. J. ("Defs.' Reply 56.1") ¶ 1, ECF No. 71-1.) After the truck drove through the intersection at Rockland Avenue and Marymount Street, Queens, New York, the truck was pulled over by two members of the New York Police Department's ("NYPD") narcotics team. (*Id.* ¶¶ 6–8.) The parties dispute which members of the narcotics team were present on the scene. According to Defendants, the officers at the scene were Defendants Moyer and Reich. (*See, e.g., Id.* ¶¶ 8-15.) Plaintiff contends that the two officers present were Defendants Moyer and/or Scarlatelli and/or Reich. (*See, e.g., id.* ¶ 48.) The parties also dispute the basis for the stop. Plaintiff maintains that at the time the tow truck entered the intersection the light was yellow. (*Id.* ¶ 6, 45.) Defendants maintain that the tow truck was observed passing through a red light, nearly colliding into the NYPD patrol van. (*Id.* ¶ 6, 45.)

In any event, once the tow truck was stopped, two officers approached the truck on either side. (*Id.* ¶ 9.) The officer manning the passenger side of the tow truck observed a clear orange bottle containing loose pills and tin foil sticking out of the open side pocket of Plaintiff's jacket. (*Id.* ¶ 11.) Thereafter, the officers instructed Plaintiff and the driver to exit the vehicle and escorted them to the passenger side of the truck.[2] (*Id.* ¶¶ 12–13.) An officer recovered the pill bottle, which, Plaintiff informed him, contained either Oxycodone or Percocet, as well as Xanax. (*Id.* ¶¶ 15–16.) The pill bottle, which was labeled as either Percocet or Oxycodone, contained at least a dozen pills. (*Id.* ¶ 19.) Some of the pills were wrapped in foil, and many of which did not

---

[1] The following facts are taken from the parties' statements of material fact pursuant to Local Rule 56.1 and annexed exhibits. Unless otherwise noted, the facts are undisputed.
[2] Plaintiff disputes that any officer viewed the pill bottle prior to asking Plaintiff to step out of the car, but offers no admissible evidence in support of his claim. (Defs.' Reply 56.1 ¶ 12)

match the label—including 2 hydrocodone (generic Vicodin) pills, 5 alprazolam (generic Xanax) pills, and other prescription medications. (*Id.* ¶¶ 17–20.)

Plaintiff informed the officers that he had in his possession a prescription for all of the medication on his person. (*Id.* ¶ 63.) Specifically, Plaintiff claimed to have had in his possession two prescriptions for hydrocodone with use-by dates of April 3, 2013 and September 21, 2015 and a prescription for alprazolam dated March 21, 2014, with a use-by date of March 27, 2015. (*Id.* ¶¶ 39-41, 79.) Plaintiff also claimed to have a doctor's letter in his possession, which permitted him to carry the medication that was found. (*Id.* ¶¶ 23-24, 38, 62-63, 78.)

Defendants maintain that they conducted a search of Plaintiffs' belongings at the scene and were unable to locate any letter or prescription for the medication. (*Id.* ¶ 24.) From their search of Plaintiff and his belongings, the officers did, however, recover, a pill bottle bearing Plaintiff's name, an inhaler, ID, handicapped MetroCard, change, pens, and tissues. (*Id.* ¶¶ 26, 57.) In conducting the search, Plaintiff's clothes were not removed but the searching officer unfastened the string of Plaintiff's pants, reached inside Plaintiff's pants, and touched his genital area and buttocks. (*Id.* ¶ 58.) Plaintiff was subsequently arrested for unlawful possession of alprazolam and acetaminophen/hydrocodone in violation of New York Penal Law section 220.03 and was transported to the precinct.[3] (*Id.* ¶¶ 28, 31-32, 77; Decl. of Brett H. Klein ("Klein Decl."), Ex. 9, Arrest Report, ECF No. 64-9.)

---

[3] Plaintiff's 56.1 statement includes a number of facts that seemingly relate to his excessive force claim including his conditions of confinement in the police van and the injuries he sustained as a result of Defendants' conduct. (*See, e.g.,* Defs.' Reply 56.1 ¶¶ 69-72.) In response, Defendants do not dispute Plaintiffs' recitation of these facts. Instead, Defendants respond only that the facts are immaterial to the motion. (*Id.*) Defendants are correct on this point. With respect to the excessive force claim, Defendants make no arguments for dismissal based on the merits. Rather, Defendants' argument is exclusively devoted to whether it was Defendant Moyer or Defendant Scarlatelli who was responsible for the "rough ride" to the precinct. (Mem. Law Supp. Defs.' Partial Mot. Summ. J. ("Defs.' Mem.") 16-19, ECF No. 67-2.)

At the precinct, Defendant Scarlatelli, who had been designated the arresting officer for the narcotics team, oversaw the preparation of the arrest paperwork for Plaintiff, which involved reviewing the relevant completed reports and speaking with the arresting officers about the circumstances of each arrest. (*Id.* ¶¶ 3, 34.) Defendant Scarlatelli is identified as the arresting officer in the arrest report. (Klein Decl., Ex. 9.) Defendant Moyer prepared a supporting deposition, which Defendant Scarlatelli submitted, along with the other arrest paperwork, to the prosecutor the next day. (Defs.' Reply 56.1 ¶¶ 35–36.) The morning after his arrest, Plaintiff was taken to Staten Island Criminal Court, where he was released from custody without appearing before a judge. (*Id.* ¶ 37.) The state declined to pursue charges, determining that it could not prevail. (*Id.* ¶ 76.)

## STANDARD OF REVIEW

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant[s] are entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The movants bear the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330–31 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004). Where the non-movant bears the burden of proof at trial, the movants' initial burden at summary judgment can be met by pointing to a lack of evidence supporting the non-movant's claim. *Celotex Corp.*, 477 U.S. at 325. Once the movants meet their initial burden, the non-movant may defeat summary judgment only by producing evidence of specific facts that raise a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Anderson*, 477 U.S. at 250; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). The Court is to believe the evidence of the non-movant and draw all

justifiable inferences in his favor, *Anderson*, 477 U.S. at 255, but the non-movant must still do more than merely assert conclusions that are unsupported by arguments or facts. *Bellsouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996).

## DISCUSSION

### I.   False Arrest and Unlawful Imprisonment[4]

Defendants maintain that Plaintiff's claim for false arrest must be dismissed because the arrest was made based on probable cause. (Mem. Law Supp. Defs.' Partial Mot. Summ. J. ("Defs.' Mem.") 7, ECF No. 67-2.) Indeed, "there can be no claim for false arrest where the arresting officer had probable cause to arrest the plaintiff." *Dufort v. City of New York*, 874 F.3d 338, 347 (2d Cir. 2017) (citing *Escalera v. Lunn,* 361 F.3d 737, 743 (2d Cir. 2004)). Whether there was probable cause in this case—that is, "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime"—is debatable. *Id.* at 348 (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)).

Here, the parties neither dispute that an officer observed a clear orange bottle containing loose pills and tin foil in Plaintiff's jacket, nor that the bottle contained at least two dozen pills, including 2 hydrocodone pills, 5 alprazolam pills, and other prescription medications. (Defs.' Reply 56.1 ¶¶ 11, 15, 17–21.) There is substantial dispute among the parties concerning whether Plaintiff retained a prescription for all of the medication in his possession and whether those prescriptions were on his person at the time of his arrest. (*Id.* ¶¶ 24, 63-64.) The parties agree,

---

[4] Plaintiff also purports to bring his false arrest and unlawful imprisonment claims against Defendant City of New York as well. (Am. Compl. ¶¶ 42-45, 80.) Plaintiff fails to make any arguments as to Defendant City of New York in his opposition brief. (*See* Pl.'s Opp.) But even if he did, "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). The claims for false arrest and imprisonment against Defendant City of New York are thus dismissed.

5

however, that the five tablets of alprazolam recovered from Plaintiff were found outside of their original container. (*Id.* ¶¶ 19-21.) Plaintiff's prescribed dosage of alprazolam was a maximum of two pills per day. (*Id.* ¶ 42.)

Section 220.03 of New York Penal Law ("N.Y.P.L.") prohibits the knowing and unlawful possession a controlled substance. N.Y.P.L. § 220.03. By way of reference, New York Public Health Law ("N.Y.P.H.L.") section 3345 defines the unlawful possession as "possessing a [controlled substance] outside of the original container in which it was dispensed," "[e]xcept for the purpose of current use by the person . . . for whom such substance was prescribed or dispensed." N.Y.P.H.L. § 3345; *see also Cortes v. City of New York*, 148 F. Supp. 3d 248, 253 (E.D.N.Y. 2015) ("In the present context, section 220.03 effectively 'piggy-backs' on section 3345 by taking its 'unlawful[ness]' element from that statute.").

Defendants press that possession of a controlled substance that exceeds the daily prescribed dosage does not fit the "current use" exception under the New York Public Health Law. (Defs.' Mem. 8-9.) Hence, according to Defendants, Plaintiff's possession of five tablets of alprazolam, when his prescription allowed for a daily dosage of only two tablets, was unlawful and probable cause for his arrest. (*Id.*) Plaintiff contends that the Defendants construction of the law is too narrow and unsupported by law. (Pl.'s Mem. Law Opp. Defs.' Mot. Summ. J., ECF No. 68 ("Pl.'s Opp.") 13, ECF No. 68.) Plaintiff's contention, however, ignores at least one case in this circuit that adopted a reading of the statutes similar to Defendants'. *See, e.g., Ferebee v. City of New York*, 2017 WL 2930587, at *6 (S.D.N.Y. July 6, 2017) (finding that where Plaintiff's prescription was for one pill every 12 hours, his possession of 3.5 pills loose in his pocket was beyond what was necessary for "daily use" and constituted

6

probable cause for the purposes of a malicious prosecution claim). This Court need not decide on which side of this argument it falls.

Even assuming that the officers erred in their belief that the five tablets of alprazolam outside of their original container violated section 220.03, they would nonetheless be entitled to qualified immunity on this claim. In the context of false arrest claims, "an officer is entitled to qualified immunity if he had either probable cause or arguable probable cause. Arguable probable cause exists if officers of reasonable competence could disagree on whether the probable cause test was met." *Dufort*, 874 F.3d at 354 (internal citations and quotation marks omitted). Under the facts of this case, Defendants have easily established arguable probable cause for Plaintiff's arrest. Apart from the fact that Plaintiff was carrying more than his daily dose of alprazolam, he also did not actually have a valid prescription for the medication. Prescriptions for alprazolam and other schedule II, III, and IV controlled substances are not "effective for a period greater than six months from the date the prescription is signed." N.Y. C.L.S. Pub. Health § 3339(2). The alprazolam prescription was dated March 27, 2014, and therefore expired on September 27, 2014 under the law. (Defs.' Reply 56.1 ¶ 41.) Plaintiff was arrested with the pills on November 18, 2014, almost two months after the expiration date of the prescription. (*Id.* ¶ 1.) Thus, "Plaintiff's literal violation of the statutes [§ 3345 and § 220.03] entitles [Defendants] to qualified immunity." *Cortes*, 148 F. Supp. 3d at 255. Plaintiff's false arrest claim is dismissed accordingly.

## II. Unreasonable Search[5]

Defendants argue that Plaintiff has no grounds to complain of an unreasonable search because the search here amounted to no more than a "brief pat down of his buttocks under his

---

[5] Plaintiff's complaint as pleaded does not allege a claim for unlawful seizure. (*See.* Compl.) However, in Plaintiff's opposition, he argues that he was "unlawfully seized" because the traffic stop was unreasonable. (Pl.'s

pants and a brief pat down of his genitals over his pants" that was reasonable under the Fourth Amendment. (Defs.' Mem. 10-11.)

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. Instead, in each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider [1] the scope of the particular intrusion, [2] the manner in which is it conducted, [3] the justification for initiating it, and [4] the place in which it is conducted.

*Harris v. Miller*, 818 F.3d 49, 58 (2d Cir. 2016) (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)) (internal quotation marks omitted).

Here, the searching officer "undid the string of plaintiff's pants and placed his hands in plaintiff's pants and touched his genital area and buttocks." (Defs.' Reply 56.1 ¶ 58.) When questioned about the search at Plaintiff's pre-discovery 50-h hearing, the following colloquy ensued:

> "**Q:** Did they ever remove your clothes and perform a search of your body?
> **A:** No, they did a search of my body with opening the string up and sticking their hands down into me. . . .
> **Q:** Where did they put their hands?

---

Opp. 6.) Specifically, Plaintiff claims that, "when the tow truck entered the intersection, the light was yellow, and therefore the driver did not commit a traffic infraction," which was the basis for the stop. (Pl.'s Opp. at 7 (citing N.Y. C.L.S. Veh. & Tr. § 1111).) Even if Plaintiff had alleged a claim for unlawful seizure, his claim would fail. "The Fourth Amendment permits brief investigative stops—such as the traffic stop in this case—when a law enforcement officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Navarette v. California*, 572 U.S. 393, 398 (1981) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)). Reasonable suspicion may lawfully rest on reasonable mistakes of both fact and law. *Heien v. North Carolina*, 135 S. Ct. 530, 536 (2014). "[T]he court must view the totality of the circumstances through the eyes of a reasonable and cautious police officer on the scene." *United States v. Bailey*, 743 F.3d 322, 332 (2d Cir. 2014). Here, the officers believed the light was red, which means they had "a particularized and objective basis" for the traffic stop. (Declaration of Eliza Fudim ("Fudim Decl."), Ex. E, 27:18–24, ECF No. 67-8; *see also* Fudim Decl., Ex. F, 51:21–25, ECF No. 67-9.) Even if the light was yellow when Plaintiff entered the intersection as Plaintiff says, the Defendants still had had a reasonable suspicion that a traffic law had been violated or commenced the traffic stop under a reasonable mistake of fact and thus there was no unlawful seizure. *See, e.g.*, *Cardona v. Connolly*, 361 F. Supp. 2d 25, 29 (Conn. D. 2005) (finding reasonable belief that a traffic law was violated where plaintiff testified that their "light was yellow turning red" as they passed through an intersection).

> **A:** They put their hands down around my waist and near my butt and then they grabbed the front of me outside of the thing, and they grabbed the outside of me front and back."

(Klein Decl., Ex. 2, Weiss Testimony, 82:6-19, ECF No. 70-2.)  The Court finds it unclear what "grabb[ing] the front of me outside of the thing" means—whether Plaintiff was describing that the officers patted him down between his underwear and pants in the front of his groin, or something else completely.  However, it is undisputed that at least some part of the search was done under Plaintiff's pants.[6]  Moreover, there can be no dispute that this search was conducted on a public street in full view of any passersby.

Certainly, public, under-the-pants, warrantless searches—as occurred here—have been found to be justified where there were facts and circumstances that led the officers to conclude that the arrestee was secreting drugs in his underwear or a bodily orifice.  *See United States v. Bazy*, 1994 WL 539300, at *3, 8 (D. Kan. Aug. 29, 1994); *People v. Jones*, 3 Misc. 3d 481 776 N.Y.S.2d 750, 751 (N.Y. Sup. Ct. 2004); *United States v. Murray*, 22 F.3d 1185 (D.C. Cir. 1994) (unpublished opinion).  But, Defendants have offered no facts or circumstances to justify the search of Plaintiff that would permit dismissal of the unreasonable search claim as a matter of law in this case.  Nor is it clear that they could.  At the time the search was conducted, Defendants knew Plaintiff to be a passenger in a car which they believed to have run a red light.

---

[6] In their Reply 56.1 statement, Defendants did not dispute the scope of the search but objected to the identity of the searching officer.  (Defs.' Reply 56.1 ¶ 58.)  Now in briefing, Defendants argue—primarily through the repeated italicization of the word "outside" in Plaintiff's pre-discovery 50-h hearing testimony—that Plaintiff's buttocks were patted down inside his pants and his genitals were only patted down outside of his pants.  (Defs.' Mem. 11, Fn 33.)  Defendants characterize the search as a "minimally invasive pat-down search of an arrestee's genital area," and try to persuade the Court to dismiss the unreasonable search claim by citing to four cases that found over-the-clothing pat downs to be reasonable.  (*Id.* 11-12. (citing *Scalpi v. Amorim*, 2018 WL 1606002, at *18 (S.D.N.Y. Mar. 29, 2018) (all contact with plaintiff's breasts and groin area was over her clothing); *Pascual v. Fernandez*, 2013 WL 474292 (S.D.N.Y. Jan. 29, 2013) (search was of the areas of Plaintiff's body that were covered by clothing); *Golden v. Cty. of Westchester*, 2012 WL 4327652 (S.D.N.Y. Sept. 18, 2012) (above the clothing pat-down with "provably accidental or *de minimis*" bodily intrusion); *Friedman v. Young*, 702 F. Supp. 433 (S.D.N.Y. 1988) (fully clothed, pat-down.)).  As there is undisputed under-the-pants touching that occurred here, Defendants' cited caselaw is inapposite and provides no support for their position that the search that occurred here was reasonable.

9

(Defs.'s Reply 56.1 ¶¶ 1, 14.)  Defendants observed a prescription pill bottle lined in tin foil in Plaintiff's pocket.  (*Id.* ¶ 11.)  Plaintiff readily identified the pills.  (*Id.* ¶¶ 16, 22–23, 63.)  The search of Plaintiff's pockets produced nothing more incriminating other than the pill bottle.  (*Id.* ¶ 57.)  Indeed, the crime for which Plaintiff was arrested for was N.Y.P.L. section 220.03, a Class A misdemeanor.  (Klein Decl., Ex. 9.)

This is not a case where police officers found two blocks of cocaine hidden in an arrestee's pants, observed the arrestee "squirming in apparent discomfort from sitting on something," and then through a visual inspection were able to see a plastic-wrapped substance lodged between the arrestee's buttocks before conducting the search.  *Bazy*, 1994 WL 539300, at *6.  Nor is this a case where police officers visually observed a plastic bag containing drugs between the cheeks of an arrestee's buttocks, and then waited to conduct the search until they were out of the public's eye.  *Jones*, 776 N.Y.S.2d at 751.  This is also not a case where officers observed an arrestee place drugs into the rear of his pants and then upon arrest, move in such a way that led officers to believe he was trying "push drugs deep in his buttocks area."  *Murray*, 22 F.3d at 1185.  In short, this is not a case where the search was patently justified.

In a last-ditch effort to rid themselves of this claim, Defendants argue that the search was not a "strip search" thereby rendering it reasonable as a matter of law.  (Defs.' Mem. 10-11.)  This argument proves too much and ignores the standard set out above.  That is, whether a search can be categorically deemed a strip search is not the issue.[7]  "[I]n the absence of a proper justification, even the most uninstrusive search is unreasonable."  *Harris*, 818 F.3d at 61 (quoting

---

[7] Moreover, the bounds of what constitutes a strip search are not as sharply defined as Defendants would suggest. *See, e.g., Safford Unified Sch. Dist. #1 v. Redding*, 557 U.S. 364, 374 (2009) (assessing that where an adolescent student was directed "to remove her clothes down to her underwear, and then 'pull out' her bra and the elastic band on her underpants," as strip search was "a fair way to speak of [the search]"); *see also Bazy*, 1994 WL 539300, at *3, 8 (D. Kan. Aug. 29, 1994) (characterizing a search where "the troopers unbuckled Bazy's pants and pulled them away from his waist and checked his underwear for drugs" as "akin to a strip search").

*Byrd v. Maricopa Cty Sheriff's Dep't*, 629 F.3d 1135, 1149 (9th Cir. 2011) (Smith, J., concurring in part, dissenting in part)). On this record, the Court refuses to find that the search was reasonable as a matter of law.[8]

### III. Unreasonable Search Claims Against Detective Scarlatelli and Claims Against Detective Moyer

The Court now turns to the morass created by the parties with respect to the identities of the officers at the scene and Defendants' motion in connection with the same. Defendants argue that because Plaintiff testified in his pre-discovery 50-h hearing that Defendant Scarlatelli—not Defendant Moyer—was on the scene and responsible for Plaintiff's arrest, all claims against Detective Moyer should be dismissed. (Defs.' Mem. 16-18.) And, that because Plaintiff named Defendant Moyer as the searching officer in his amended complaint and failed to allege that Defendant Scarlatelli was involved in the search, the unreasonable search claim against Defendant Scarlatelli should be dismissed. (Defs.' Mem. 10.) Nonsense.

There is conflicting evidence about which two officers were responsible for the search and arrest. In Plaintiff's pre-discovery 50-h hearing, he initially testified that one officer (potentially Defendant Reich) identified himself during the traffic stop as "Matt Rice." (Klein Decl., Ex. 2, 53:21–54:11.) Plaintiff identified the second officer as "Mark Scarlatelli" and explained that he learned of Defendant Scarlatelli's involvement from "paperwork" he solicited from the precinct. (*Id.* 51:6–53:20.) While Plaintiff does not specify what paperwork he is referring to—and no paperwork reflecting Defendant Scarlatelli's name was admitted as an exhibit at the 50-h hearing—the arrest report before the Court identifies Defendant Scarlatelli as the arresting officer. (Klein Decl., Ex. 2, 53:3-55:4; Klein Decl., Ex. 9.) From there, Plaintiff

---

[8] In the alternative, Defendants contend that they are entitled to qualified immunity with respect to the search. (Defs.' Mem. 15.) Here, because there is a dispute as to the scope of the search, the Court cannot make a determination under the doctrine of qualified immunity at this time.

11

testified that he believes that Matt Rice is a "false name," and that the individual is actually named "Michael," which he also found in "paperwork." (Klein Decl., Ex. 2, 54:23–55:4.) Defendants' lawyer opted to obfuscate the 50-h hearing record by referring to the two officers as "Mike" and "Mark" throughout the rest of the hearing. (*Compare, e.g.,* Klein Decl., Ex. 2, 55:23-56:4 *with, e.g.,* Defs.' Reply 56.1 ¶¶ 25-28.)

Meanwhile, Defendants maintain that Defendants Moyer and Reich were the officers who conducted the traffic stop and that Defendants Scarlatelli was "the arresting officer for paperwork purposes" only and, at the time of the traffic stop, was in a patrol vehicle with two other officers. (Fudim Decl., Ex. D, Scarlatelli Deposition, 11:12–21, 12:2–21, ECF No. 67-7; Fudim Decl., Ex. E, Moyer Deposition, 18:23–25, 32:3–7, ECF No. 67-8; Fudim Decl., Ex. F, Reich Deposition, 28:24–29:5, ECF No. 67-9.) At bottom, there is a dispute of fact as to the identity of the officers at the scene.[9] Moreover, it should not go without saying that despite Defendants' acknowledging that two officers were at the scene—and that the two are amongst the three named as Defendants by Plaintiff—Defendants ask the Court to only provide Plaintiff recourse against one. The math does not add up. The Court declines to dismiss the unreasonable search claim against Defendant Scarlatelli, or the excessive force, failure to intervene, and unreasonable search claims against Defendant Moyer.

## IV.   *Monell* **Claim**

Defendants advise the court that Plaintiff "agreed, via an email by counsel, to withdraw his municipal liability claim." (Defs.' Mem. 19.) Plaintiff has not filed a stipulation of dismissal but does not address the *Monell* claim in his opposition brief, and thus this claim is deemed abandoned by the Court. *See Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014) ("In the

---

[9] The parties are, of course, free to stipulate at any time as to the identities of the officers on the scene and resolve the issue.

12

case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims . . . that are not defended have been abandoned."). Even if the claim had not been abandoned, Plaintiff "has submitted no evidence in support of his claim under *Monell* . . . that his constitutional injuries were the result of an official policy or custom of the City." *Davis v. City of New York*, No. 2017 WL 4326504, at 3 (E.D.N.Y. Sept. 28 2017). "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985). "Conclusory allegations of a municipality's pattern or policy of unconstitutional behavior are insufficient to establish a *Monell* claim, absent evidence to support such an allegation." *McAllister v. New York City Police Dep't*, 49 F. Supp. 2d 688, 705–06 (S.D.N.Y. 1999) (collecting cases). Here, Plaintiff provides no evidence to support the conclusory allegation in their Amended Complaint that the alleged constitutional violation was "a direct result of the unconstitutional policies, customs, or practices of the City of New York." (Am. Compl. ¶¶ 29–30.) Accordingly, the Court dismisses Plaintiff's *Monell* claim against Defendant City of New York.

V. **Violation of New York State Constitution**

Plaintiff has also abandoned his New York State constitutional claim by failing to argue it in his opposition brief. Even if this claim was not abandoned, it too would fail. "District courts in this circuit have consistently held that there is no private right of action under the New York State Constitution where, as here, remedies are available under § 1983." *Campbell v. City of New York*, No. 09-CV-3306, 2011 WL 6329456, at *5 (E.D.N.Y. Dec. 15, 2011) (collecting cases). Because Plaintiff alleged various claims under § 1983, he cannot assert a separate cause of action under the New York State Constitution. *See id.* Plaintiff's claims pursuant to the New York State Constitution are dismissed.

13

## CONCLUSION

For the foregoing reasons, Defendants' motion for partial summary judgment is GRANTED in part and DENIED in part. All of Plaintiff's claims against Defendant City of New York are dismissed with prejudice. Plaintiff's claims against Defendants Moyer, Reich, and Scarlatelli for false arrest under § 1983 and state law are dismissed with prejudice. Plaintiff's claims arising under the New York State Constitution are also dismissed with prejudice. Plaintiff's claims against Defendants Moyer, Reich, and Scarlatelli for excessive force, unreasonable search, failure to intervene, assault and battery remain.

SO ORDERED.

Dated: Brooklyn, New York
      March 31, 2020

/s/ LDH
LaSHANN DeARCY HALL
United States District Judge